

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

1:02-CV- 1470 SEB

DORIS O. COLE, KEITH A. TAYLOR,
JOHN B. PYLE, JOHN HARDY, and IRVIN H.
HERMAN, individually and on behalf of all
others similarly situated,

                              **Plaintiffs,**

       **v.**

IPALCO ENTERPRISES, INC., JOHN R.
HODOWAL, RAMON L. HUMKE, JOSEPH D.
BARNETT, JR., ROBERT A. BORNS,
DANIEL R. COATS, MITCHELL E.
DANIELS, JR., REXFORD C. EARLY,
OTTO N. FRENZEL III, MAX L. GIBSON,
ANDRE B. LACY, L. BEN LYTLE,
MICHAEL S. MAURER, ANDREW J. PAINE,
JR., SALLIE W. ROWLAND, THOMAS H.
SAMS, BRYAN G. TABLER, GERALD D.
WALTZ, STEVE J. PLUNKETT, MAX
CALIFAR, TOM A. STEINER, JOHN D.
WILSON,

                            **Defendants.**

No.

**CLASS ACTION COMPLAINT
FOR VIOLATION OF FEDERAL
SECURITIES LAWS**

**DEMAND FOR JURY TRIAL**

## I.   NATURE OF THE ACTION

1.   This is a proposed securities class action brought on behalf of all persons, other

than defendants and affiliated persons as described below ("the Class") who purchased or

otherwise acquired the securities of IPALCO ENTERPRISES, INC. ("IPALCO") and who held

CLASS ACTION COMPLAINT FOR VIOLATION   **- 1 -**
OF FEDERAL SECURITIES LAWS
1629.10 0001 BSC.DOC

such securities as of September 8, 2000 and converted them to AES shares pursuant to the acquisition as defined below ("the Class Period").

2.      On July 17, 2000, IPALCO announced in a news release that AES would acquire IPALCO under an Agreement and Plan of Share Exchange ("the acquisition") whereby each share of IPALCO common stock would be exchanged for a number of AES shares of common stock such that IPALCO shareholders would receive a fixed value of $25.00 per share. The news release quoted an exchange ratio of approximately 0.50 AES shares per IPALCO share.

3.      Defendants solicited proxies in a proxy statement/prospectus ("the Proxy Statement") dated September 8, 2000, which formed part of the Form S-4 Registration Statement (as amended) for an Exchange Offering of Shares of AES common stock for IPALCO common stock ("the Registration Statement"). The Registration Statement was first filed with the Securities Exchange Commission ("SEC") on August 16, 2000.

4.      In the July 17 news release, Defendant Hodowal stated in his express capacity as IPALCO Chairman and CEO:

> **This transaction is a positive development for our shareholders, employees, customers and communities. Additionally, IPALCO believes that by adding AES's global experience and resources to our own local utility expertise, IPALCO will be able to offer its individual customers and its communities better and broader services at competitive prices.**

5.      In the Proxy Statement, Defendants made the following recommendation:

> **After careful consideration, IPALCO's board of directors has unanimously determined that the share exchange and the share exchange agreement are fair to you and in your best interests and in the best interests of IPALCO. IPALCO's board of directors has approved the share exchange agreement and unanimously recommends that you vote FOR approval of the share exchange agreement.**

6.      In addition, Defendants made representations in the Proxy Statement that the proposed "business combination is [IPALCO'S] ... best strategic alternative and will enhance its ability to compete and provide greater value to [shareholders and] ... AES's purchase price

represents a significant premium over the historical price of IPALCO common stock."
Defendants also stated that "AES has significant resources, a strong reputation and past success
in completing transactions."  These representations were made in the face of the following facts
all of which were known or should have been known by Defendants at that time:

      a.     AES stock had a volatile history;

      b.     Regulatory approval of the acquisition would take at least 6 months and
IPALCO shareholders would be locked into the value of AES shares on the closing date resulting
in the stagnation of IPALCO shares in the interim even if AES shares rose significantly in value;

      c.     AES was highly leveraged with 75% of its capitalization in debt;

      d.     AES shares were subject to significant dilution as they were linked to
loans that were secured by a certain value of AES stock thereby requiring the issue of further
shares as security in the event that the stock declined in price;

      e.     AES international holdings were subject to an adverse regulatory
environment;

      f.     AES was a growth stock with no history of dividend income since
December 1983, pursuant to its policy to retain earnings, in contrast with IPALCO whose
shareholders had enjoyed, relied upon, and continued to expect an average dividend income yield
of nearly 3% combined with modest and continuing growth;

      g.     AES had a high-risk market capitalization of 30 times earnings and five
(5) times book value.

      h.     AES had withdrawn its cash offer to acquire IPALCO shares for $25.00
per share without any apparent explanation casting doubt on AES's cashflow/liquidity and
ongoing viability.

      7.     The Registration Statement included numerous other representations about the
financial state of AES which dwelt on the extent and breadth of AES's global operations and its
diversified assets.

8.    At the close of the share exchange on March 27, 2001, the exchange rate had dropped to 0.463 AES shares per IPALCO share resulting in an exchange of 41,524,236 AES shares for 89,685,177 IPALCO shares.

9.    Following the closing date of the acquisition, AES's stock price began to plummet and on September 25, 2001, AES announced to the market a series of poor financial results and revealed a range of regulatory and operational difficulties in its international holdings.  Opportunistically, AES sought to blame September 11 for its performance, although it was clear that these difficulties predated September 11 and were quite unrelated to it.  As a result of this announcement, AES stock plummeted from $24.50 to $12.25 in one day.  Ultimately, AES stock has plummeted by approximately 90%, and now trades at around $2.95.  AES is on the verge of bankruptcy.

10.    Defendants were well aware of these difficulties or potential difficulties, and the true risk of the transaction, well prior to the close of the share exchange.  On March 20, 2000, the 27 Directors and Officers of IPALCO owned or had option rights to 2,705,239 shares, constituting 3.16% of the common stock of IPALCO.  Over the period between July 17, 2000 and the closing date on March 27, 2001, Defendants proceeded to dump their shares in IPALCO at prices between $23.83 and $24.36.  For instance, on January 4, 2001, Hodowal sold 87,076 shares at $23.88 per share for $2,079,735.  This occurred in circumstances where Hodowal was the principal advocate of the acquisition in recommending it to shareholders and soliciting proxies.

11.    Further, while Defendants were dumping shares from their personal portfolios at the very moment they were advocating the acquisition as in the best interests of IPALCO and its shareholders, they had meanwhile structured the acquisition so as to trigger termination benefits to certain officers including Defendants totaling $46,331,000.  Hodowal alone received $15,730,000.

12.     The Proxy Statement was materially false and misleading in failing to disclose Defendants' clear misgivings and secret knowledge about the financial state of AES, Defendants' plans to dump their shares in IPALCO, the inherent volatility of AES shares, particularly compared to the stability of IPALCO shares, the unsuitability of AES shares for those numerous IPALCO shareholders who relied on dividend income, the precarious capital structure of AES, and the adverse regulatory environment affecting AES's international operations.

13.     At the end of the day, as a result of deliberate concealment of the material facts, investors who owned a stable utility stock wound up with a highly speculative "bubble" stock whose value was overstated and has now burst.  Defendants, and not shareholders, were the real beneficiaries of this transaction.

## II.     JURISDICTION AND VENUE

14.     This Court has jurisdiction in this action pursuant to Section 22 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77v and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331, 1337 and 1367.

15.     Plaintiffs bring this action pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k and Sections 10(b), 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78n(a) and 78t(a) and Rules 10b-5 and 14a-9, 17 C.F.R. §§ 240.10b-5 and 240.14a-9 promulgated thereunder by the SEC.

16.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. §§ 1391(b) and (c).  Many of the acts and transactions giving rise to the violations of law complained of herein occurred in this District.  In addition, many of Defendants reside in this District.

17.     In connection with the acts and conduct alleged in this Complaint, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including

the mails and telephone communications systems, and the facilities of a national securities market.

### III.    THE PARTIES

18.    Plaintiffs each exchanged shares of IPALCO common stock for AES common stock in pursuant to the acquisition as recommended in the Proxy Statement and sustained damages. Their transactions are as set forth in the attached certifications and below.

19.    Plaintiff Doris O. Cole, resides in Indianapolis, Indiana, and exchanged 31,100 shares of IPALCO stock for 14,399 shares of AES Corp. stock on or about March 27, 2001.

20.    Plaintiff Keith A. Taylor, resides in Indianapolis, Indiana, and exchanged 3,776 shares of IPALCO stock for 1,748 shares of AES Corp. stock on or about March 27, 2001.

21.    Plaintiff John B. Pyle, resides in Martinsville, Indiana, and exchanged 15,200 shares of IPALCO stock for 7,002 shares of AES Corp. stock on or about March 27, 2001.

22.    Plaintiff John Hardy, resides in Indianapolis, Indiana, and exchanged 17,000 shares of IPALCO stock for 8,000 shares of AES Corp. stock on or about March 27, 2001.

23.    Plaintiff Irvin H. Herman, resides in Indianapolis, Indiana, and exchanged 25,730 shares of IPALCO stock for 11,400 shares of AES Corp. stock on or about March 27, 2001.

24.    Defendant IPALCO was, at the times material to this Complaint, a holding company incorporated in Indiana whose main subsidiary was Indianapolis Power & Light Company. IPALCO's total electric revenues during 1999 were approximately $800 million and total assets were $2.3 billion.

25.    Defendant John R. Hodowal was Chairman, President and CEO of IPALCO and approved the Proxy Statement. Hodowal received $15.73 million in termination benefits as a direct result of the acquisition. In addition, he sold millions of dollars of IPALCO shares prior to the closing date of the acquisition.

26.    Defendant Ramon L. Humke was, at all relevant times hereto, a director of IPALCO.

27.     Defendant Joseph D. Barnett, Jr. was, at all relevant times hereto, a director of
IPALCO.

28.     Defendant Robert A. Borns was, at all relevant times hereto, a director of
IPALCO.

29.     Defendant Daniel R. Coats was, at all relevant times hereto, a director of
IPALCO.

30.     Defendant Mitchell E. Daniels, Jr. was, at all relevant times hereto, a director of
IPALCO.

31.     Defendant Rexford C. Early was, at all relevant times hereto, a director of
IPALCO.

32.     Defendant Otto N. Frenzel, III was, at all relevant times hereto, a director of
IPALCO.

33.     Defendant Max L. Gibson was, at all relevant times hereto, a director of IPALCO.

34.     Defendant Andre B. Lacy was, at all relevant times hereto, a director of IPALCO.

35.     Defendant L. Ben Lytle was, at all relevant times hereto, a director of IPALCO.

36.     Defendant Michael S. Maurer was, at all relevant times hereto, a director of
IPALCO.

37.     Defendant Andrew J. Paine, Jr. was, at all relevant times hereto, a director of
IPALCO.

38.     Defendant Sallie W. Rowland was, at all relevant times hereto, a director of
IPALCO.

39.     Defendant Thomas H. Sams was, at all relevant times hereto, a director of
IPALCO.

40.     Defendant Bryan G. Tabler was, at all relevant times hereto, a director of
IPALCO.

41.     Defendant Gerald D. Waltz was, at all relevant times hereto, a director of IPALCO.

42.     Defendant Steve J. Plunkett was, at all relevant times hereto, a director of IPALCO.

43.     Defendant Max Califar was, at all relevant times hereto, a director of IPALCO.

44.     Defendant Tom A. Steiner was, at all relevant times hereto, a director of IPALCO.

45.     Defendant John D. Wilson was, at all relevant times hereto, a director of IPALCO.

## IV.     CLASS ACTION ALLEGATIONS

46.     Plaintiffs bring this case as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons and entities who purchased or otherwise acquired the securities of IPALCO and who held or continued to hold such securities as from September 8, 2000 when they were exchanged for AES shares.  Excluded from the Class are Defendants, members of the immediate family of each of the defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any Defendants, including IPALCO and AES, the individual Officers and Directors of IPALCO and AES during the Class Period, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

47.     The members of the Class are so numerous that joinder of all members is impracticable.  The precise number of members of the Class is not known, but is likely to be in the thousands.

48.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class actions and securities litigation.  Plaintiffs have no interests that are adverse or antagonistic to those of the Class.

49.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by many individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for such class members to individually seek redress for the wrongful conduct alleged herein.

50.     The prosecution of separate actions by the members of the Class would create a risk of inconsistent adjudications establishing incompatible standards of conduct for the defendants.

51.     The prosecution of separate actions by individual class members would also create the risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards of conduct for Defendants under the laws cited herein.

52.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class in that Defendants have acted on grounds generally applicable to the Class.  Among the questions of law and fact common to the Class are:

        a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

        b.     whether Defendants made false and misleading statements in the Registration Statement including the Proxy statement;

        c.     whether Defendants acted negligently in making the statements in the Registration Statement including the Proxy statement;

        d.     whether Defendants are liable for such negligence under the relevant provisions of the federal securities laws;

        e.     whether the members of the Class have sustained damages and, if so, the appropriate measure thereof.

53.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  The names and addresses of the record owners of IPALCO shares held during the Class Period are available from IPALCO or its transfer agent(s).  Notice may be provided to such record owners via first class mail using techniques and a form of notice similar to those customarily used in class actions.

## V.     FACTUAL ALLEGATIONS

### A.     Background

54.     On October 27, 1926, the Indianapolis Power & Light Company ("IPL") was incorporated as an Indiana Corporation.  The company acquired other electrical generating companies in Indianapolis and survived the depression years to acquire a nine-story office building in 1935 on the southeast corner of Monument Circle and Meridian Street, which has remained its headquarters building.  It became a public company in 1940.

55.     The company prospered and, in 1983, reorganized by forming a holding company known as IPALCO Enterprises, Inc.  IPALCO stock continued to grow in value and paid a continuing dividend which averaged a yield of nearly 3%.  Hodowal became Chairman and Chief Executive Officer in 1989.   On October 20, 2000, at the special meeting of shareholders to vote on the acquisition, Hodowal announced that as of December 1998, IPALCO was "the number one company [electric utility] in the country creating shareholder value per dollar of capital invested" and this analysis "covered the entire period of every company's existence from the day they were founded through December 31, 1998."  In 1999, despite this performance, IPALCO began to consider "the possibility of a transforming transaction such as a business combination."

### B.     The Search for "a Transforming Transaction"

56.     The Board of IPALCO proceeded to consider and negotiate with three (3) potential acquirers who expressed an interest in acquiring the company at a cash price of between $23 and $25 per share.  These proposals were made over the period from late 1999

through late April 2000.  Following a first approach made in late April 2000, AES emerged with

a proposal on May 19 to acquire IPALCO at a cash price of $25 per share.  However, on June 22,

AES informed IPALCO that it was no longer willing to offer a cash price of $25 per share, but

would be willing to offer the same amount in value of AES stock.  There was no apparent

explanation for the about face.  AES also informed IPALCO that it was likely the approval of the

Securities and Exchange Commission would be required under the Public Utility Holding

Company Act ("PUHCA") § 9(a)(2) (15 U.S.C. § 79i(a)(2)).

57.     As of June 20, IPALCO had another offer on the table from another acquirer at a

cash price of $23.50 per share.  Despite this offer, the IPALCO Board determined on June 27 to

negotiate exclusively with AES culminating in the execution of the Agreement and Plan of Share

Exchange on July 15, 2000.  This resolution of the Board was most curious in light of the

following:

a.     AES stock had a volatile history;

b.     Regulatory approval of the acquisition would take at least 6 months and

IPALCO shareholders would be locked into the value of AES shares on the closing date resulting

in the stagnation of IPALCO shares in the interim even if AES shares rose significantly in value;

c.     AES was highly leveraged with 75% of its capitalization in debt;

d.     AES shares were subject to significant dilution as they were linked to

loans that were secured by a certain value of AES stock thereby requiring the issue of further

shares as security in the event that the stock declined in price;

f.     AES international holdings were subject to an adverse future regulatory

environment;

g.     AES was a growth stock with no history of dividend income since

December, 1983, pursuant to its policy to retain earnings, in contrast with IPALCO whose

shareholders had enjoyed, relied upon, and continued to expect an average dividend income yield

of nearly 3% combined with modest and continuing growth;

       h.     AES had a high-risk market capitalization of 30 times earnings and five (5) times book value;

       i.     AES had withdrawn its cash offer to acquire IPALCO shares for $25.00 per share without any apparent explanation casting doubt on AES's cashflow and ongoing viability.

58.     On August 16, 2000, the initial Registration Statement was filed and on September 15, Defendants filed or supervised the filing of the Proxy Statement that was mailed to all IPALCO shareholders.

59.     The Proxy Statement failed to disclose that AES was subject to a number of equity-linked loans secured by a certain value of AES stock requiring the issue of additional stock in the event that AES's share price fell resulting in substantial dilution of AES shares and associated vulnerability of the stock. Further, it failed to disclose the fact that AES was subject to adverse changes in the regulatory environment of its international holdings, and in particular, in the United Kingdom where the regulatory agency was to introduce New Energy Trading Arrangements ("NETA") causing AES's U.K. operations to generate a loss. It further failed to disclose that the reason for AES's sudden withdrawal of its cash offer for IPALCO shares of $25.00 per share was because of its difficulty in funding such an acquisition caused by its deteriorating cash flow/liquidity.

60.     The Proxy Statement misrepresented that the acquisition was in the best interests of IPALCO and its shareholders. In addition, the Proxy Statement misrepresented that the acquisition would provide greater value to shareholders. These representations include the following:

> **After careful consideration, IPALCO's board of directors has unanimously determined that the share exchange and the share exchange agreement are fair to you and in your best interests and in the best interests of IPALCO. IPALCO's board of directors has approved the share exchange agreement and unanimously recommends that you vote FOR approval of the share exchange agreement.**

Your board of directors has carefully reviewed and considered the terms and conditions of the share exchange agreement, and has determined it is fair to and in the best interests of IPALCO and its shareholders for IPALCO to be acquired by AES pursuant to the terms of the share exchange agreement, and recommends a vote for approval of the share exchange agreement.

IPALCO is effecting a share exchange with AES in order to become part of a larger, more diversified company with significantly greater financial resources and a greater ability to respond to utility industry pressures such as deregulation, new regulatory compliance costs and increasing competition for customers.

The IPALCO board of directors believes that IPALCO and its shareholders will realize a number of benefits from the share exchange, including, among other benefits, the following:

IPALCO believes that a business combination is its best strategic alternative and will enhance its ability to compete and to provide greater value to you;

AES's purchase price represents a significant premium over the historical price of IPALCO common stock; and

AES has significant resources, a strong reputation and past success in completing transactions.

The IPALCO board looked closely at AES's business reputation, corporate culture and its past successes in completing other transactions. IPALCO believes that AES has significant financial and operational resources at its disposal and an excellent reputation for the quality and efficiency of its services throughout the world. AES also brings superior and varied management experience to the transaction. IPALCO believes that as a result of these factors, the transaction will enable IPALCO to develop, grow and compete in ways not currently possible.

61. Defendants well knew these statements were misleading, as is clearly evidenced by their simultaneous dumping of shares from their personal portfolios while at the same time unanimously recommending the acquisition to other shareholders. Indeed, their cashing in of shares is all the more remarkable when considered in light of the huge cash termination benefits they stood to receive. Hodowal was to receive $15.73 million in such benefits, but still sold millions of dollars of his personal shareholding in IPALCO before the close of the acquisition. It is inconceivable he would do so if he genuinely believed the representations he was making as to

the benefits which would accrue to IPALCO shareholders as a result of the acquisition. Such considerations apply equally to the other Defendants.

62.     Such representations were made negligently by Defendants who disregarded the truth concerning AES's financial state and the risks to IPALCO shareholders while at the same time Defendants dumped their own shares throughout the period from the announcement of the acquisition to its closing date.

C.     **The Termination Benefits of the Directors and Officers**

63.     Upon the close of the acquisition, officers and certain directors ("officers") of IPALCO received termination benefits totaling $46,331,000. The following is a table showing the major beneficiaries:

| Name | Position | Amount |
|---|---|---|
| John R Hodowal | Chairman and CEO | $15,730,000 |
| Ramon L Humke | Vice Chairman and COO | $7,921,000 |
| John R Brehm | SVP, Finance | 4,157,000 |
| Bryan G Tabler | SVP, Secretary | $1,954,000 |
| Joseph A Gustin | VP, Information Services | $1,447,000 |

All of the above amounts became due and payable on the closing date of the acquisition. The termination benefit agreements entered into by the officers of IPALCO provided such benefits were payable if IPALCO were to undergo an acquisition of control, and if such director or officer were to resign for "good reason" within three years. "Good reason" is defined to mean a reduction in the compensation historically payable to such officers. In the Proxy Statement, it was asserted that "AES has indicated that it does not intend to offer compensation plans to IPALCO officers that are comparable to those historically available to these officers," thereby triggering the termination benefits. There was no such term in the Agreement and Plan of Share Exchange.

64.     The benefits included a severance benefit equal to nearly three times the annual average compensation over the past five years.  The benefits included bonuses received from the sale by IPALCO in 2000 of its interest in Internet Capital Group, Inc., and income received from the exercise of certain stock options which took place between January 1, 2000 and September 7, 2000.

65.     None of the defendants disclosed whether any other of the offers to purchase IPALCO under "a transforming transaction" would have left them in their positions, thereby directly or indirectly saving IPALCO from a liability for termination payments in excess of $46 million.

**D.    The AES Collapse**

66.     After the close of the acquisition on March 27, 2001, AES shares began to decline.

67.     Following the closing date of the acquisition, AES's stock price began to plummet and on September 25, 2001, AES announced to the market a series of poor financial results and revealed a range of regulatory and operational difficulties in its international holdings.  Opportunistically, AES sought to blame September 11 for its performance, although it was clear that these difficulties predated September 11 and were quite unrelated to it.  As a result of this announcement, AES stock plummeted from $24.50 to $12.25 in one day.  Ultimately, AES stock has plummeted by approximately 90%, and now trades at around $2.95.  AES is on the verge of bankruptcy.

68.     It became increasingly clear that AES's international holdings were becoming unprofitable due at least in part to the changing regulatory environment.  Further, it was not until March 28, 2002, that AES first disclosed via its 2001 Report on Form 10-K that AES was subject to equity-linked loans requiring the company to issue approximately 72 million shares.  AES has been forced to sell assets to repay these loans early to avoid the requirement to provide further shares as security due to its falling share price.

69.     On June 6, 2002, Standard & Poor's downgraded AES's credit rating to "BB-" and concluded that AES was "squarely at the mercy of the banks" and "[i]f AES cannot rollover its [bank] maturities, the company will not remain solvent." It is likely AES will go into bankruptcy.

## VI.     STATUTORY SAFE HARBOR

70.     The statutory safe harbor providing for forward-looking statements under certain circumstances does not apply to the false statements pleaded in this Complaint, as the statutory safe harbor does not apply to Defendants' misrepresentations of currently existing or historical facts.

## COUNT I

### (AGAINST ALL THE DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER)

71.     Plaintiffs incorporate by reference and reallege the preceding paragraphs as though fully set out herein. This count is asserted against all the Defendants.

72.     This count is brought pursuant to Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a) and Rule 14a-9.

73.     The IPALCO Defendants solicited proxies via the Proxy Statement which contained the negligent material misstatements and omissions referred to above. The Defendants owed a duty to Plaintiffs and members of the Class to make reasonable and diligent enquiries as to the truth and accuracy of all of the statements made in the Proxy Statement, and to ensure there were no material omissions and that the statements were not otherwise misleading.

74.     Plaintiffs and other members of the Class acquired the shares of AES as a result of the approval of the acquisition by the shareholders of IPALCO. Such acquisition and such approval were fairly traceable to the solicitation of proxies to approve the acquisition via the Proxy Statement which was an essential link in gaining such approval.

75.     By reason of the conduct alleged herein, the IPALCO Defendants violated Section 14(a) of the Exchange Act and Rule 14-9 promulgated thereunder.

76.     Plaintiffs and other members of the Class could not have reasonably discovered the facts concerning the matters alleged herein until September 25, 2001, at the earliest.  Less than two years have elapsed since that time and less than five years have elapsed after the AES shares were bona fide offered to the public.

### COUNT II

### (AGAINST ALL THE DEFENDANTS FOR VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT)

77.     Plaintiffs incorporate by reference and reallege the preceding paragraphs as though fully set forth herein.  This count is asserted against all the Defendants.

78.     This count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k.

79.     The Proxy Statement contained untrue statements of material fact and omissions of material fact as referred to above.  As the Proxy Statement was filed specifically to comply with IPALCO's obligations under Federal securities laws in respect to the acquisition, and Plaintiffs and members of the Class acquired AES shares solely as a result of the acquisition, such acquisition is clearly traceable to the offering covered by the statement.

80.     Pursuant to Section 11(a) of the Securities Act, the Defendants are strictly liable to Plaintiffs for such misstatements and omissions.

81.     Plaintiffs and members of the Class acquired the AES shares within one year of the Registration Statement and are therefore conclusively presumed to have relied on the statement in acquiring the shares.

82.     Plaintiffs and the other members of the Class have suffered substantial damages as a result of the plummet in value of AES shares.

83.     By reason of the conduct alleged herein, Defendants have violated Section 11 of the Securities Act.

84.     Plaintiffs and other members of the Class could not have reasonably discovered the facts concerning the matters alleged herein until September 25, 2001, at the earliest.  Less than two years have lapsed since that time and less than five years have elapsed after the AES shares were bona fide offered to the public.

## COUNT III

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER)

85.     Plaintiffs incorporate by reference and reallege the preceding paragraphs as though fully set out herein.  This count is asserted against all Defendants.

86.     During the Class Period, defendants, directly and indirectly, by use of means and instrumentalities of interstate commerce and/or the mails, engaged in a plan and course of conduct, pursuant to which each of them knowingly or recklessly engaged in acts, transactions, practices, and courses of business that operated as a fraud and deceit upon plaintiffs and the other members of the Class; made various untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices and artifices to defraud in connection with the purchase and sale of securities, which were intended to and, throughout the Class Period, misled Plaintiffs as to the financial state of AES, and that the acquisition was in the interests of IPALCO and its shareholders.

87.     At all relevant times, Defendants had actual knowledge that the statements and documents complained of herein were materially false and misleading as set forth herein and intended to deceive plaintiffs and the other members of the Class.  In the alternative, those defendants acted in reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would have revealed the materially false and misleading nature of the statements and documents complained of herein although such facts were readily available to defendants.  Said facts and omissions of defendants were committed willfully or with reckless

disregard for the truth.  The IPALCO Defendants dumped their own shares in IPALCO prior to the close of the acquisition, and structured the deal so as to trigger huge termination benefits to line their own pockets.

88.     At all relevant times, the misstatements and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class.  The misstatements and omissions resulted in the approval of the acquisition by the shareholders of IPALCO.

89.     By virtue of the foregoing, each Defendant has violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

90.     Plaintiffs and other members of the Class could not have reasonably discovered the facts concerning the matters alleged herein until September 25, 2001, at the earliest.  Less than two years have elapsed since that time and less than five years have elapsed after the AES shares were bona fide offered to the public.

## COUNT IV

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT)

91.     Plaintiffs incorporate by reference and reallege the preceding paragraphs as though fully set forth herein.  This count is asserted against the individual Defendants.

92.     Throughout the Class Period, each of the Individual Defendants, by reason of their positions with IPALCO, had the power and influence, and exercised the same, to cause IPALCO to engage in the unlawful acts, conduct, and practices complained of herein.  As a result, at the time of the wrongs alleged herein, the Individual Defendants were "controlling persons" of IPALCO within the meaning of § 20(a) of the Exchange Act.

93.     Pursuant to § 20(a) of the Exchange Act, by reason of the foregoing, each of the Individual Defendants is liable to the same extent as IPALCO for the aforesaid violations of Section 10(b) of the Exchange Act and Section 11 of the Securities Act and Rule 10b-5

promulgated thereunder.  As a direct and proximate result of said defendants' wrongful conduct during the Class Period, plaintiffs and the other members of the Class have suffered substantial damages in connection with their acquisition of AES shares.

WHEREFORE, Plaintiffs and the Class pray for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

B.     Awarding Plaintiffs and the members of the Class compensatory damages;

C.     Awarding Plaintiffs and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert witness fees and other costs;

D.     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64, 65 and any appropriate state law remedies, including attaching, impounding, and imposing a constructive trust on or otherwise restricting the proceeds of the Individual Defendants' open market sales in the hands of defendants to assure that the Class has an effective remedy; and

E.     Awarding such other relief as this Court may deem just and proper.

## VII.   JURY DEMAND

Plaintiffs demand a trial by jury.

DATED this _24th_ day of September, 2002.

JOHN R. PRICE AND ASSOCIATES

By_____
   John R. Price
State Bar No. 5828-49
9000 Keystone Crossing, Suite 150
Indianapolis, Indiana 46240
Telephone: (317) 844-8822
Facsimile: (317) 844-7766

**HAGENS BERMAN LLP**

By_____
   Steve W. Berman
Nick Styant-Browne
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

# CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, ___Doris O. Cole___, declare, as to the claims asserted under the federal securities laws, that:

1.    I have reviewed the complaint filed in this action, and authorize John R. Price & Associates and Hagens Berman to file the same or a similar complaint on my behalf.

2.    I did not purchase IPALCO ENTERPRISES, INC. securities at the direction of plaintiff's counsel or in order to participate in this private action.

3.    I am willing to serve as a representative party on behalf of the class, including being a named plaintiff in subsequent and/or consolidated actions and providing testimony at deposition and trial, if necessary.

4.    I exchanged _31,100_ IPALCO shares for _14,399_ AES Corp. shares on or about March 27, 2001.

5.    During the three years prior to the date of this certification, I have not served or sought to serve as a representative for a class in any action under the federal securities laws.

6.    I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any class recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _9th_ day of _Sept._, 2002 at _Indpls., In._
                                                        (City, State)

_Doris O. Cole_
Doris O. Cole

# CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, _Keith A. Taylor_____, declare, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint filed in this action, and authorize John R. Price & Associates and Hagens Berman to file the same or a similar complaint on my behalf.

2.      I did not purchase IPALCO ENTERPRISES, INC. securities at the direction of plaintiff's counsel or in order to participate in this private action.

3.      I am willing to serve as a representative party on behalf of the class, including being a named plaintiff in subsequent and/or consolidated actions and providing testimony at deposition and trial, if necessary.

4.      I exchanged _3776_____ IPALCO shares for _1748_____ AES Corp. shares on or about March 27, 2001.

5.      During the three years prior to the date of this certification, I have not served or sought to serve as a representative for a class in any action under the federal securities laws.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any class recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _9_ day of _SEPT._____, 2002 at _INDIANAPOLIS, IN._____
                                                    (City, State)


                                        _____
                                        Keith A. Taylor

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, ___John B. Pyle___, declare, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint filed in this action, and authorize John R. Price & Associates and Hagens Berman to file the same or a similar complaint on my behalf.

2.      I did not purchase IPALCO ENTERPRISES, INC. securities at the direction of plaintiff's counsel or in order to participate in this private action.

3.      I am willing to serve as a representative party on behalf of the class, including being a named plaintiff in subsequent and/or consolidated actions and providing testimony at deposition and trial, if necessary.

4.      I exchanged ___15 200___ IPALCO shares for ___700 2___ AES Corp. shares on or about March 27, 2001.

5.      During the three years prior to the date of this certification, I have not served or sought to serve as a representative for a class in any action under the federal securities laws.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any class recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___9___ day of ___SEPT___, 2002 at ___MARTINSVILLE  IN___
                                                    (City, State)

_____
John B. Pyle

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, __John Hardy_____, declare, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint filed in this action, and authorize John R. Price & Associates and Hagens Berman to file the same or a similar complaint on my behalf.

2.      I did not purchase IPALCO ENTERPRISES, INC. securities at the direction of plaintiff's counsel or in order to participate in this private action.

3.      I am willing to serve as a representative party on behalf of the class, including being a named plaintiff in subsequent and/or consolidated actions and providing testimony at deposition and trial, if necessary.

4.      I exchanged __17,000__ IPALCO shares for __8,000__ AES Corp. shares on or about March 27, 2001.

5.      During the three years prior to the date of this certification, I have not served or sought to serve as a representative for a class in any action under the federal securities laws.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any class recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __9th__ day of __Sept__, 2002 at __Indianapolis, IN__.
                                                              (City, State)

_John Hardy_____
John Hardy

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, __IRVIN H. HERMAN__, declare, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint filed in this action, and authorize John R. Price & Associates and Hagens Berman to file the same or a similar complaint on my behalf.

2.      I did not purchase IPALCO ENTERPRISES, INC. securities at the direction of plaintiff's counsel or in order to participate in this private action.

3.      I am willing to serve as a representative party on behalf of the class, including being a named plaintiff in subsequent and/or consolidated actions and providing testimony at deposition and trial, if necessary.

4.      I exchanged __24,730__ IPALCO shares for __11,449__ AES Corp. shares on or about March 27, 2001.

5.      During the three years prior to the date of this certification, I have not served or sought to serve as a representative for a class in any action under the federal securities laws.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any class recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __23rd__ day of __September__ 2002 at __Indianapolis, IN__.
                                                              (City, State)

_____
IRVIN H. HERMAN

JS 44
(Rev. 07/86)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

DORIS O. COLE, KEITH A. TAYLOR, JOHN B. PYLE, JOHN HARDY, and IRVIN H. HERMAN, individually and on behalf of all others similarly situated

## DEFENDANTS

IPALCO ENTERPRISES, INC., et al

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Marion
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Marion
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
John R. Price
JOHN R. PRICE & ASSOCIATES
9000 Keystone Crossing, Suite 150
Indianapolis IN 46240
(317) 844-8822

ATTORNEYS (IF KNOWN)

1:02-CV- 1470 SEB

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

This case is brought under Sec. 22 of the Securities Act of 1933 (15 USC §77V) and Section 77 of the Securities Exchange Act of 1934 (15 USC § 78 aa and 28 USC §§ 1331, 1337 and 1367) and is a class action complaint for violation of Federal Securities Laws.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE /PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 630 Liquor Laws | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 690 Other | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC (405(g)) ☐ 863 DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 Habeas Corpus | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 28 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 another district (specify) Transferred from
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** ☒ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE  Hon. David Hamilton

DOCKET NUMBER  02-0477 C H/K

DATE 9/24/02

SIGNATURE OF ATTORNEY OF RECORD

, John R. Price

UNITED STATES DISTRICT COURT